Universal Turbine v. Brij Bhargava     CV-98-553-JD  01/21/99
                UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE

<u>Universal Turbine</u>
<u>Energy Systems, Inc.</u>

       v.                          Civil Nos. 98-553-JD, 98-555-JD

<u>Brij Bhargava</u>


                          O R D E R


     Following the demise of a business relationship between

plaintiff, Universal Turbine Energy Systems, Inc. ("UTES"), and

defendant, Brij Bhargava, UTES brought two companion actions in

New Hampshire state court against Bhargava.  In one, UTES sought

a permanent injunction to prevent Bhargava from disclosing

information related to a product that was the subject of the

parties' joint venture, and in the other, UTES brought claims

against Bhargava for breach of contract, negligent

misrepresentation, and breach of fiduciary duty.  Bhargava

removed both cases to federal court and now moves to dismiss for

lack of personal jurisdiction (document no. 2 in each case).  As

the factual background of each case is the same for purposes of

personal jurisdiction analysis, the motions are considered

together.

## Background

The plaintiff, UTES, is a corporation that was organized in October of 1993 by a group of individuals interested in developing a high speed gas turbine electrical generator. The defendant, Bhargava, was involved in the organization of UTES, is a shareholder of the corporation, and was a director and officer of the corporation from its inception until he resigned in September of 1996. Bhargava has been a resident of California at all times relevant to this case. He has never visited New Hampshire.

Individuals interested in the development of a gas turbine generator began to investigate the commercial opportunity for the project. In May of 1993, one member of the group met with Bhargava in Arizona. Bhargava's interest in developing a high speed generator to meet the needs of a potential customer changed the focus of the corporation's development plans from a mechanical to a high speed generator.

UTES was incorporated in New Hampshire on October 22, 1993. One week later, an organizational meeting of the board of directors was held in Scottsdale, Arizona, since the board members lived in Maine, Arizona, California, and Florida. The corporate documents reviewed and signed by Bhargava in Arizona indicated that UTES was a New Hampshire corporation. A New Hampshire law firm handles UTES's corporate legal work.

Tamara Jones, the daughter of one of the UTES founders, was elected to serve as registered agent of the corporation in New Hampshire. Because Ms. Jones worked for Kenmart Sales at 11 Columbia Drive, Amherst, New Hampshire, a mailbox and telephone and fax numbers for UTES were established at that address. A bank account was opened for UTES in New Hampshire. Bhargava and the other officers and directors were issued UTES stationery with its New Hampshire address.

UTES accepted a proposal by Bhargava and another board member, Suresh Gupta, operating as Ashman Consulting Services, to work on the development of a high speed turbine. In January of 1994, Bhargava incorporated his business as Ashman Technologies. Thereafter, Bhargava did business with UTES through Ashman Technologies, sending invoices to UTES that listed the New Hampshire address.[1] Ashman Technologies was paid from UTES's New Hampshire bank account.

Initially, the officers and directors focused on finding funding sources for development of the generator. One possibility that was considered, but did not work out, was a development corporation to be located in Berlin, New Hampshire, with the cooperation of a local bank. In the spring of 1994,

_____

[1]Bhargava says in his affidavit that although the invoices show UTES's New Hampshire mailing address, he was directed to send the invoices to one of the UTES principals at his home in Maine.

3

UTES opened facilities in Florida, and since then, Florida has been its principal place of business.

With the assistance of Bhargava, UTES found a financial partner, Elliott Turbomachinery, a Delaware corporation with its principal place of business in Jeannette, Pennsylvania, to fund the development of the generator. In December of 1994, UTES entered a development agreement establishing a joint venture with Elliott. The officers of UTES, including Bhargava, signed the agreement at Elliott's office in Pennsylvania. The agreement provides that it will be construed under the laws of the state of Pennsylvania.

Bhargava resigned as an officer and director of UTES on September 3, 1996. On September 16, 1996, UTES and Elliott signed an agreement to establish a new corporation with its principal office in Stuart, Florida.

In a writ of summons from Hillsborough County (North) Superior Court dated September 9, 1998, returnable the first Tuesday of October, 1998, UTES brought claims against Bhargava for breach of contract, negligent misrepresentation, and breach of fiduciary duty all arising from their business relationship. On September 11, 1998, UTES filed a petition for a permanent injunction, based on provisions of the development agreement with Elliott Turbomachinery Co., to prevent Bhargava from "releasing to third parties any of the information relating to the high

4

speed gas turbine generator developed by UTES and from in any way competing with the UTES TA and its derivatives." Bhargava removed both cases to this court pursuant to 28 U.S.C.A. § 1441(a) alleging subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C.A. § 1332. Bhargava now moves to dismiss both cases for lack of personal jurisdiction.

<u>Discussion</u>

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995). Absent pertinent factual or credibility issues, a hearing is not required, and the jurisdictional question may be resolved based on a prima facie showing. <u>Foster-Miller, Inc. v. Babcock & Wilson Canada</u>, 46 F.3d 138, 145-47 (1st Cir. 1995); <u>accord</u> <u>Nowak v. Tak How Investments, Ltd.</u>, 94 F.3d 708, 712 (1st Cir. 1996). In the prima facie process, the court acts as "data collector," accepting "the plaintiff's (properly documented) evidentiary proffers as true." <u>Foster-Miller</u>, 46 F.3d at 145.

The court's personal jurisdiction over foreign defendants in diversity jurisdiction cases depends upon the reach of the forum state's long-arm statute and due process restraints imposed by the Constitution. <u>Nowak</u>, 94 F.3d at 712. New Hampshire's long-arm statute applicable to individuals, N.H. Rev. Stat. Ann.

5

510:4, I (1997), has been construed to be "coextensive with the outer limits of due process," focusing the court's attention on "the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards." Sawtelle, 70 F.3d at 1388.

UTES argues that the court has specific personal jurisdiction over Bhargava based on his business dealings with UTES, a New Hampshire corporation, which are the subject of UTES's claims against Bhargava. Three factors guide the constitutional analysis of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Nowak, 94 F.3d at 712-13 (quoting Pritzker v. Yari, 42 F.3d 53, 60-61 (1st Cir. 1994)).


A. Relatedness

The relatedness requirement "focus[es] the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." Sawtelle, 70 F.3d at 1389. To satisfy relatedness in the context of a tort claim, such as

6

misrepresentation, UTES must show that Bhargava's contacts with New Hampshire foreseeably or proximately lead to UTES's cause of action, or at a minimum, UTES must show a "meaningful link" between Bhargava's contacts and the harm UTES claims. Nowak, 94 F.3d at 716. For its contract claims, UTES must show that Bhargava's "forum-based activities [were] instrumental in the formation of the contract." Massachusetts School of Law v. American Bar, 142 F.3d 26, 35 (1st Cir. 1998) (quotation omitted).

The pertinent contacts UTES asserts in support of personal jurisdiction are that Bhargava was a shareholder, officer, and director of UTES, a closely-held New Hampshire corporation, that he received stock and a participation allowance from UTES, that he acted as a third-party contractor, and that he was bound by fiduciary duties under New Hampshire law. In addition, UTES argues that Bhargava's refusal to sign agreements for noncompetition and nondisclosure "have the potential to economically damage the plaintiff which is a New Hampshire corporation." 98-553, Pl. Obj. at 11.

The representations and discussions between UTES and Bhargava and Bhargava's activities as a "third party contractor" with UTES, which are the bases for UTES's breach of contract and misrepresentation claims in 98-555-JD, all occurred outside of New Hampshire. Bhargava's alleged breaches of fiduciary duties

7

also occurred outside of New Hampshire.  The agreement between UTES and Elliott Turbomachinery, which is the subject of UTES's claim for injunctive relief in 98-553-JD, was signed in Pennsylvania, performed in Florida, and by its terms, is subject to Pennsylvania law.  To the extent the effects of Bhargava's alleged breaches of contract, misrepresentation, and breaches of fiduciary duties are relevant to determining personal jurisdiction in this case, the effects would be most likely felt in Florida, UTES's principal place of business, not New Hampshire.  See, e.g., VDI Technologies v. Price, 781 F. Supp. 85, 90 (D.N.H. 1991).

In short, the only connection UTES asserts between Bhargava and New Hampshire is based on his positions in the corporate structure of UTES.  As UTES acknowledges, Bhargava's positions in UTES's corporate structure are not enough to show that UTES's claims arise from Bhargava's contacts with New Hampshire.  See Shaffer v. Heitner, 433 U.S. 186, 213-16 (1977); American Freedom Train Foundation v. Spurney, 747 F.2d 1069, 1074 (1st Cir. 1984).  UTES's arguments that its claims relate to Bhargava's duties and benefits from the corporation, incorporated in New Hampshire, merely avoid discussion of where the activities giving rise to UTES's claims actually occurred.  The relatedness requirement is not satisfied "merely because a plaintiff's cause of action arose out of the general relationship between the parties."  Sawtelle,

8

70 F.3d at 1389.

Accordingly, UTES has not provided a sufficient prima facie case to establish the relatedness requirement of personal jurisdiction for either 98-553-JD or 98-555-JD.


B.  Purposeful Availment

Since UTES has not carried its burden of persuasion through the first of the three factors in the personal jurisdiction analysis, an extended review of the remaining factors is unnecessary.  See Massachusetts School of Law, 142 F.3d at 36-7 (stopping analysis after plaintiff failed to establish relatedness factor).  "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," but rather guarantees that the exercise of jurisdiction is 'fair, just, or reasonable.'"  Nowak, 94 F.3d at 716 (quoting Sawtelle, 70 F.3d at 1391) (further quotations omitted).  The two essential elements of purposeful availment are voluntariness and foreseeability.  Id.  Put in terms of the cases at issue, UTES must show that Bhargava's pertinent contacts with New Hampshire were voluntary, not merely by chance, and that based on those contacts, he could have reasonably foreseen being haled into a New Hampshire court because of his corporate positions and relationships with UTES or his participation in UTES's contract

9

with Elliott Turbomachinery in Pennsylvania.  See Sawtelle, 70
F.3d at 1391-94.

Although Bhargava voluntarily accepted positions in a New
Hampshire corporation, the place of incorporation of UTES appears
to be entirely fortuitous.  New Hampshire seems to have been
chosen based on the residence of the daughter of one of the
founders who served as corporate agent.  None of the founders or
the officers, directors, or shareholders were New Hampshire
residents.

As Bhargava did not do business or conduct any of the
activities leading to UTES's claims against him in New Hampshire,
it was not foreseeable that claims would be brought against him
in New Hampshire courts.  To the extent UTES's claims of breach
of fiduciary duty arise under New Hampshire law, that may affect
a choice of law question for those claims but does not establish
that Bhargava purposefully availed himself of privileges in New
Hampshire.  See Shaffer, 433 U.S. at 216.  Accordingly, even if
UTES had satisfied the requirements of relatedness, the record
does not support a determination that Bhargava purposely availed
himself of the privilege of conducting business in New Hampshire.


C.  The Gestalt Factors

The following considerations, the "gestalt factors," are
pertinent to assessing the reasonableness of personal

10

jurisdiction:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 717 (quotation omitted). At the gestalt stage of the analysis, a particularly weak showing on the first two factors increases the burden on a plaintiff to show that jurisdiction would, nevertheless, be reasonable. See Sawtelle, 70 F.3d at 1394.

UTES offers no compelling argument that personal jurisdiction over Bhargava in New Hampshire would be reasonable despite the lack of relatedness of the claims to the forum and the lack of Bhargava's purposeful availment of benefits in New Hampshire. Instead, the circumstances in these two cases demonstrate that it would be unreasonable to require Bhargava, a resident of California, to defend the claims in New Hampshire, and it would be reasonable to expect UTES, which was formed in Arizona and does business in Florida, to bring its claims in a more appropriate forum. New Hampshire has little interest in claims brought by a New Hampshire corporation whose principal place of business is in Florida particularly when all of the relevant activities occurred outside of New Hampshire. Neither the administration of justice nor policy considerations encourage

11

personal jurisdiction in New Hampshire.

Based upon the record and arguments presented in both 98-553-JD and 98-555-JD, UTES has failed to show that personal jurisdiction over Bhargava exists in New Hampshire.

Conclusion

For the foregoing reasons, defendant's motions to dismiss (98-553-JD document no. 2 and 98-555-JD document no. 2) are granted. Accordingly, the clerk of court is directed to enter judgment in favor of the defendant in each case, and close both cases.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 21, 1999

cc:  Paul C. Semple, Esquire
     Steven A. Solomon, Esquire

12